**GENERAL MOTORS CORPORATION,**
**Employer-Appellant,**

v.

**Frederick J. HUESTER, Claimant-**
**Appellee.**

Superior Court of Delaware.

New Castle.

April 30, 1968.

Max S. Bell, Jr., Richards, Layton & Finger, Wilmington, for employer.

Frank J. Gentile, Jr., Wilmington, for claimant.

## OPINION

O'HORA, Justice.

General Motors Corp., as employer, here appeals from a decision of the Industrial Accident Board of Delaware awarding workmen's compensation to Frederick J. Huester for a back injury. Huester has cross appealed for higher attorney fees.

Huester, beginning in September, 1963, worked on an assembly line at a General Motors Assembly Plant, where it was his job to turn frames over onto carriers as they proceeded along the assembly line. On June 25, 1964, he injured his back while turning an "exceptionally hard frame". After reporting the incident to his foreman, Huester went to the Medical Department where nurses gave him initial treatment with ice packs. He went home early and on June 30, 1964, he went to see the company doctor and was given heat treatments for a few days. On July 1, 1964, Huester went to see his family doctor who placed him in a Maryland hospital from July 7 to July 11, 1964, where he received conservative medical treatment. This was followed by an examination by an orthopedic specialist who found nothing wrong with Huester and sent him back to work. Huester testified that he could not do his job and that he again left work after three days, visited another doctor and received physical therapy treatments, again to no avail. After going to still another doctor and receiving more physical therapy treatments, Huester was sent to a surgeon who operated on him, performing a spinal fusion to correct condition found. After a period of convalescence, Huester returned to the company

physician who unsuccessfully sought light duty work for him. Eventually in August, 1965, he obtained a job in an auto body shop which did not require heavy work.

In January, 1965, Huester petitioned the Industrial Accident Board for compensation. After hearing medical and factual testimony the Board concluded that Huester sustained a compensable injury while turning over frames, that as a result of this injury he was unable to perform his work from June 25, 1964 to August 2, 1965, and that on June 25, 1964 he sustained a 12½ per cent loss of the use of his back.

General Motors attacks the award, contending as follows:

(1) the compensation was awarded for total disability on days when Huester worked and was paid;

(2) Huester failed to prove by substantial and competent evidence the circumstances of a particular accident and that such accident caused his disability and permanent back injury;

(3) Huester cannot be properly awarded any medical witness fee for a doctor who did not appear at the hearing but whose testimony was given by deposition.

Huester opposes the contentions of General Motors alleging that there is substantial evidence to support the findings of the Board and that medical witness fees should cover all medical witnesses including those whose testimony is taken by deposition. In addition, Huester contends that the Board erred in limiting attorney fees to 30 per cent or $500.00, whichever is smaller, a statutory change relating to fees having been enacted after the petition was filed but before the hearing before the Board.

The conclusion of facts found by the Board are as follows:

"1. In accordance with the provisions of the Delaware Workmen's Compensation Law, General Motors Corporation, Employer, and Frederick J. Huester, Employee, were respec-

tively bound to pay and receive compensation.

2. That Frederick J. Huester did by a preponderance of competent medical and factual testimony establish that he sustained a compensable injury on June 25, 1964, arising out of and in the course of his employment with General Motors Corporation, to wit: injured back when turning over frames.

3. That as a result of this injury Frederick J. Huester was unable to perform his work from and including June 25, 1964 through August 2, 2, 1965.

4. That also as a result of this injury Frederick J. Huester required surgical, medical and hospital services, medicine and supplies.

5. That a preponderance of competent medical testimony established that Frederick J. Huester has sustained 12½% loss of use of his back as a result of the injury on June 25, 1964."

■ The sole function of this Court on an appeal from a decision by the Industrial Accident Board is to determine whether or not there was substantial competent evidence to support that decision. M. A. Hartnett, Inc. v. Coleman, 226 A.2d 910 (Del.1967); Johnson v. Chrysler Corp., 213 A.2d 64 (Del.1965). In exercising its proper function in such cases the Superior Court does not sit as a trier of fact with authority to weigh evidence, determine credibility and make factual findings and conclusions. Johnson v. Chrysler Corp., supra. Thus the factual findings of the Board are to be upheld, unless the record does not contain satisfactory proof to support such findings. Ibid.

In the instant case it is the finding of this Court that there is satisfactory proof to support the above cited factual findings made by the Board.

■ General Motors has attacked the award of total disability alleging that there were periods when Huester worked and was paid and other periods when he was able to work. However, the Board's ruling must be sustained, as there is substantial evidence that Huester was totally disabled from June 25, 1964 to August 2, 1965. Huester testified himself that prior to the incident on June 25, 1964, he experienced no difficulty with his back, yet after the incident he was unable to perform his job, although he attempted to return to it. Additionally, and as referred to earlier, he was under the treatment of several physicians, was hospitalized for various periods and finally underwent a spinal fusion operation. Subsequent to the operation there is medical testimony that Huester was 100 per cent disabled as to heavy work. Thereafter and until August, 1965, he was unable to find available any light work to which he was qualified.

Total disability has been recently defined by the Delaware Supreme Court as follows:

"The term 'total disability', as used in § 2324 is not to be interpreted as utter helplessness. The degree of compensable disability depends on impairment of earning capacity. 'Total disability' means a disability which prevents an employee from obtaining employment commensurate with his qualifications and training. (Citation omitted). The term means such disability that the employee is unable to perform any services 'other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist'. (Citation omitted). 'Total disability' may be found, in spite of sporadic earnings, if the claimant's physical condition is such as to disqualify him from regular employment in any well-known branch of the labor market. Conversely, when the claimant is unable to obtain employment because of his physical condition, medical evidence that he could perform such work, if he could get it, will not detract

from his status of total disability. It has been well stated that the essence of the test of total disability is 'the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps'. (Citation omitted)." M. A. Hartnett, Inc. v. Coleman, 226 A.2d 910 (Del.1967).

The "odd lot" doctrine has been later defined in Delaware as follows:

"In *Hartnett*, we approved the principle of the so-called 'odd lot' doctrine. The term is used to refer to a worker who, while not completely incapacitated for work, is so handicapped by a compensable injury that he will no longer be employed regularly in any well known branch of the competitive labor market and will require a specially-created job if he is to be steadily employed. In lieu of the 'odd lot' or 'nondescript' terminology sometimes used in this connection, we choose to refer to such worker, hereinafter, as one 'displaced' from the regular labor market. * * *

Applying the rule, we hold that a 'displaced' claimant must be deemed totally disabled, within the meaning of the Workmen's Compensation Law, unless the employer is able to show the availability of regular employment within the claimant's capabilities. The rationale of the rule is fair and logical, we think, and in the spirit of the Workmen's Compensation Law. If the labor market offers regular employment to a claimant, so handicapped by a compensable injury as to disqualify him from obtaining regular work in any well known branch of the competitive labor market, the employer is in a better position to ascertain that fact than is the employee. Under such circumstances, the burden of proof fairly and properly rests with the employer." Ham v. Chrysler Corp., 231 A.2d 258 (Del.1967).

Applying these definitions to the facts outlined above, there is substantial evidence that Huester's physical condition between June 26, 1964 and August 2, 1965 was such that he was unable to obtain employment commensurate with his qualifications and training.

Furthermore, General Motors' references to work performed during specific periods do not alter this finding. First, as to the period from June 26 to July 6, 1964, the records introduced by General Motors show only that Huester worked on, and was paid for, one day, June 26, 1964. As far as disability is concerned there is nothing to show that he did any heavy work on that day.

Second, as to August 3 through August 31, 1964, although Huester testified that he worked three days during this period, there was no showing either that he was paid or as to what type of work he did. Furthermore, the fact that he was not on sick leave during this period hardly establishes that he worked every day.

▇ Finally, as to May 17 through August 2, 1965, the period following Huester's operation, when he was allowed by his physician to do light work, this is covered by the "odd lot" doctrine referred to above, in that there is evidence that due to his condition Huester could not find regular employment in any well-known branch of the competitive labor market. In such situation, where the claimant has shown that the "odd lot" doctrine applies, it is the employer who has the burden of showing the availability of regular employment within the claimant's capabilities. Ham v. Chrysler Corp., supra. In the instant case, General Motors offered no evidence on this issue.

▇ It is the further finding of the Court that Huester has shown adequate evidence of a compensable injury, i. e., one "by accident arising out of and in the course of employment". (19 Del.C. § 2301, § 2304).

The record with regard to medical testimony as to causation discloses that Dr.

Pierpont stated, in his deposition, that Huester was suffering from an aggravation of a congenital back problem. He stated,

"It was my impression that this man was suffering from an aggrevation of a congenital back problem. It is very common that a congenital deformed back such as this would break down under undue pressure, and would give difficulty which may be relieved by the use of a lumbo-sacral support. It would be my feeling that he ought to be contained in a lumbo-sacral support and ought to continuously work in same. At that time, I thought he had a disability on the basis of this aggrevation, and I thought it could or could not be continuous and permanent."

Dr. Pierpont in describing a congenital back problem, stated further that:

"By a congenital back, he has a potential weak back. It may or may not give him trouble, but he is much more likely to have trouble with it than a person with a normal back."

Dr. Pierpont also testified that the turning of the frame could cause aggravation of this condition. The point is that even though Huester suffered from a pre-existing physical defect, this will not preclude compensation if employment conditions caused a sudden and violent acceleration and deterioration of the defect. General Motors Corp. v. McNemar, 202 A.2d 803 (Del.1954).

A persuasive holding that aggravation of a congenital back condition by an accident, while engaged in work, constitutes a compensable accident in workmen's compensation is found in Theriot v. Schlumberger Well Surveying Corp., 131 So.2d 94 (La. App.1961) (congenital spondylolisthesis). Here, as discussed above, there is evidence that Huester did not have severe back trouble prior to June 25, 1964, and then the turning of a particularly difficult frame caused sudden pain and injury.

Finally, Dr. Strange gave testimony that Huester had a ten to fifteen per cent impairment of his spine when he examined him in December, 1965. Although he did not testify that the accident of June 25, 1964, caused this impairment, there is substantial evidence to that effect in the testimony of Huester himself and Dr. Pierpont's depositional testimony that aggravation of a congenital back condition could cause permanent injury.

The statute referring to the fees of medical witnesses is as follows:

"(e) The fees of medical witnesses testifying at hearings before the Industrial Accident Board in behalf of an injured employee shall be taxed as a cost to the employer or his insurance carrier in the event the injured employee receives an award." 19 Del C. § 2322(e).

This statute specifically covers "witnesses testifying at hearings before the Board". To include within such language depositions taken prior to the hearing before the Board would be a gross distortion of the statute. The cases cited by Huester do not involve statutory language similar to that in the instant case. If the legislature intended to have an employer pay for deposition evidence it could have used language clearly covering such common place pre-hearing efforts.

After the petition to the Industrial Accident Board was filed, 19 Del.C. § 2127 (a), which had limited attorney fees to 30 per cent of the award or $500.00, whichever is smaller, was amended to a new limit of 30 per cent or $2,250.00. The new section, in pertinent part, reads as follows:

"§ 2127. Attorney's fee

(a) A reasonable attorney's fee in an amount not to exceed 30% of the award or $2250, whichever is smaller, shall be allowed by the Board to any employee awarded compensation under this chapter

and Chapter 23, and taxed as costs against a party."

The award of the Board, as it applied to attorney's fee, is as follows:

"IT IS FURTHER AWARDED AND ADJUDGED by the Industrial Accident Board of the State of Delaware this Twenty-first Day of December 1966 that General Motors Corporation shall pay the reasonable attorney's fee incurred by Frederick J. Huester as a result of the hearing held on August 10, 1966, said fee to be in the amount of 30% of the above Award, or $500, whichever is smaller."

Huester contends that the Board applied the old statute and that this is improper as the new statute applies to his case.

It is not necessary here to determine which statute is applicable. Both statutes refer to "a reasonable attorney's fee" which is not to exceed certain limits. In this action the Board decided that "the reasonable attorney's fee" was 30 per cent or $500.00, whichever is smaller. "Reasonable attorney's fee" being applicable under the old and the new statutes, this Court in order to follow Huester's suggestion, would have to decide under which statute the Board acted when it used language consistent with both, and then determine a proper fee allowance. The record here presented does not support such a usurpation of the Board's prerogatives even assuming this Court has such authority.

For the reasons set forth herein the decision of the Industrial Accident Board is affirmed and appeal dismissed.

It is so ordered.