**M. A. HARTNETT, INC., Employer Below, Appellant,**

**v.**

**James COLEMAN, Claimant Below, Appellee.**

Supreme Court of Delaware.

Feb. 8, 1967.

Richard I. G. Jones, of Prickett & Prickett, Wilmington, for employer below, appellant.

Wilfred J. Smith, Jr., Wilmington, for claimant below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice:

We are called upon in this appeal to define the term "total disability" as used in the Delaware Workmen's Compensation Law, 19 Del.C. § 2324. The specific question presented is whether there was substantial evidence to support the finding of the Industrial Accident Board that the claimant's total disability had terminated.

James Coleman, the claimant, was a laborer and had been such all of his adult life. He had never attended school and was illiterate; he was untrained for any other work. In 1958 while employed by M. A. Hartnett, Inc. (hereinafter "Hartnett"), Coleman suffered back injuries compensable under the Delaware Workmen's Compensation Law. A compensation agreement was made, based upon temporary total disability. During the ensuing years, Coleman attempted to obtain employment on several occasions: He obtained work with a road construction firm, flagging traffic and sweeping dirt and dust from the new road; but because of back pain and inability to sit or stand long, he was unable to perform this work and was obliged to terminate the employment after about two weeks. He drove a truck from time to time but, because of his back, he was obliged to quit early on some days and was unable to work at all on others; for these reasons he was unable to hold that job. He also attended a job-retraining center and was assigned to the work of sorting and counting spoons; but he was dismissed on the first day because of pain resulting from continuous sitting. There is no showing of any other employment during the five year period following the injury.

In 1963, when Coleman was about 49 years of age, Hartnett petitioned the Industrial Accident Board to review the compensation agreement on the ground that Coleman's total disability had terminated. After a hearing, the Board found that Coleman "was not totally disabled from any type of employment but that he was restricted as to the type of work he could do." Coleman appealed and the Superior Court reversed the Board on the ground of insufficient evidence to support the Board's finding. Thereupon, Hartnett took this appeal.

The scope of review of factual findings of the Industrial Accident Board was stated by this Court in General Motors v. Freeman, 3 Storey 74, 164 A.2d 686 (1960) as follows:

"The position of the Superior Court and of this Court on appeal is to determine only whether or not there was sub-

stantial evidence to support the findings of the Board."

*Some* evidence, or *any* evidence, may be insufficient to support the factual findings of the Board. The evidence must be substantial; and it is the duty of the reviewing court to weigh and evaluate the evidence for sufficiency to support the findings. Nardo v. Nardo, Del., 209 A.2d 905 (1965).[1]

With this as the measure of our function on this appeal, we have reviewed the evidence which was before the Board. There were two witnesses: Coleman and a neurosurgeon.

Coleman testified that he would be willing to try, but was unable to say that he could fulfill, a "flag job" suggested by Hartnett's attorney, where he "could sit down and stand up from time to time"; that he could see no reason why he could not "sit in a chair and flag the truck"; that he would try to "run an elevator or something like that", but could not say that he was able to do so.

The physician testified that Coleman was totally "incapacitated for any work of a laboring nature" including driving a heavy truck; that a job not involving lifting or standing or back bending "ought not to be beyond the difficulty of this man." Examples of jobs suggested by Hartnett's counsel for the doctor's consideration included driving a light car, operating an elevator, cleaning chickens, sorting fruit, and inspecting eggs. Although he confessed ignorance of the details of the requirements of such work, it was the doctor's opinion that Coleman could probably perform "such light work" as long as he could avoid reaching, bending, lifting, twisting, straining or sitting or standing too long in one position. The doctor conceded that it would be difficult for a man of Coleman's background and qualifications to find any employment where he

would not be called upon to do at least one of these things. He also conceded that he had no personal knowledge whether anyone would hire a man, of Coleman's qualifications, so handicapped.

■■ The foregoing was the sum and substance of the evidence before the Board upon the basis of which it found that Coleman's total disability had terminated. The evidence is not substantial enough, in our opinion, to warrant the finding. Coleman's testimony amounted to little more than an expression of his willingness to try different types of work suggested by opposing counsel. For present purposes, his testimony may be disregarded. As to the doctor's testimony, it alone is insufficient to carry Hartnett's burden of proof. See C. F. Braun & Co. v. Mason, 3 Storey 279, 168 A.2d 105 (1961).

Generally speaking, the physician's testimony was too vague and uncertain to merit the classification of "substantial evidence." The general tone and nature of his testimony is exemplified by the following:

"Q. But a job involving driving a light vehicle such as would not be beyond his range because of his pain difficulties in the lower back. Is that right?

"A. I would think he could do something like that.

"Q. So would an elevator operator's job be beyong his range, assuming that the job had a seat as most of them do?

"A. From what I know of elevator operators, I think that he probably could do something like that."

\* \* \* \* \* \*

"Q. I don't mean to lead you into areas of the chicken industry that may be beyond your specialty.

"How about a job sorting fruit or agricultural produce, where he could sit

---

1. As distinguished from the finding of a jury which is conclusive "if supported by evidence." Del.Const. Art. 4, § 11(1) (a), Del.C.Ann.

down, that is, watching the fruit say go by where he could lift out damaged fruit, damaged tomatoes and something like that, that did not involve heavy lifting of boxes, simply sorting?

"A. If it didn't involve too great a span of reach or twisting he can do something like that.

"Q. How about a job inspecting such things as eggs, if he did not have to walk back and forth, simply watching eggs go by on an assembly line?

"A. I don't know anything about it, but it sounds as though he could do something like that."

Such doubtful statements constitute, we think, something less than substantial evidence.

Furthermore, the doctor's testimony did not constitute substantial evidence of the termination of "total disability," as that term is to be understood under 19 Del.C. § 2324. The term is undefined by the Statute and must be construed.

 The term "total disability", as used in § 2324 is not to be interpreted as utter helplessness. The degree of compensable disability depends on impairment of earning capacity. "Total disability" means a disability which prevents an employee from obtaining employment commensurate with his qualifications and training. Compare Federal Bake Shops, Inc. v. Maczynski, 4 Storey 484, 180 A.2d 615 (1962); 2 Larson's Workmen's Compensation Law, §§ 57.22, 57.53. The term means such disability that the employee is unable to perform any services "other than those which are so limited in quality, dependability, or quantity that a reasonably stable

market for them does not exist." Lee v. Minneapolis Street Railway Co., 230 Minn. 315, 41 N.W.2d 433 (1950). "Total disability" may be found, in spite of sporadic earnings, if the claimant's physical condition is such as to disqualify him from regular employment in any well-known branch of the labor market. Conversely, when the claimant is unable to obtain employment because of his physical condition, medical evidence that he could perform such work, if he could get it, will not detract from his status of total disability. It has been well stated that the essence of the test of total disability is "the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps."[2] See 2 Larson's Workmen's Compensation Law, §§ 57.00, 57.51.

These are the general dimensions of the term "total disability" as defined by the preferable authorities and as we think it should be defined under the Workmen's Compensation Law of this State.

 The evidence before the Industrial Accident Board, in the case before us, did not rise to the level of substantial evidence of termination of "total disability" within the above definition. An illiterate laborer who cannot bend, stretch, strain, lift, or stand or sit for long in one position is, we think, "totally disabled" within the meaning of our Statute.

Accordingly, the judgment below, reversing the Industrial Accident Board, is affirmed.

2. Coleman testified before the Board: "I would be willing to try anything if I could do it, just to get better if I could."