GENERAL MOTORS CORPORATION,
Employer-Appellant,

v.

Samuel L. McKENNEY, Claimant-Appellee.

Samuel L. McKENNEY, Claimant-
Appellant,

v.

GENERAL MOTORS CORPORATION,
Employer-Appellee.

Superior Court of Delaware,
New Castle.

July 29, 1969.

Max S. Bell, Jr., Richards, Layton & Finger, Wilmington, for General Motors Corporation.

Sidney Balick, Bernard Balick, Aerenson & Balick, Wilmington, for Samuel L. McKenney.

## OPINION

O'HORA, Judge.

In December, 1963, Samuel L. McKenney ("claimant") petitioned the Industrial Accident Board to award him compensation for an occupational accident which he allegedly suffered in June, 1961, during the course of his employment with General Motors Corporation ("G.M."). The Board dismissed the petition as untimely filed; claimant appealed; the Superior Court remanded the case for a decision on the merits. The Board then found, *inter alia:*

(1) That claimant sustained a compensable injury to his back on June 15, 1961, as a result of which he was unable to work at G.M. from August 8, 1961 to February 6, 1962, and incurred various medical expenses.

(2) That claimant has a loss of use of his back due to this injury although no physician fixed this loss of use at any given percentage.

(3) That claimant's inability to work at the time of the hearings before the Board

in 1965 was caused by non-compensable factors.

The award to claimant included, in addition to compensation for days missed from work, reimbursement for medical expenses, reasonable medical witness fees and an attorney's fee of $2,250.00 or 30% of the award, whichever was smaller.

G.M. has appealed from all of the Board's findings and awards, with the exception of the finding that claimant's absence from work at the time of the hearings was due to non-compensable factors. Specifically, G.M. claims (1) that the Board's decision is not supported by competent or substantial evidence, (2) that the Industrial Accident Board erred in awarding claimant attorney's fees up to $2,250.00, and (3) that claimant's petition for compensation is barred by the statute of limitations. Also noted as grounds for appeal in G.M.'s motion were the allegedly improper awards of medical expenses and witness fees, and the failure of all but one member of the Board to be present at all the hearings. However, inasmuch as these matters were not further discussed either in the briefs or at argument, the Court considers them abandoned.

Claimant has appealed from the finding that his inability to work at the time of the hearings was due to non-compensable factors. In his motion he requested that the case be remanded for a finding of permanent partial disability. In his brief and at argument, on the other hand, he sought to be classified as still temporarily totally disabled.

■ The standard of review for this Court on an appeal from the Industrial Accident Board is "to determine whether or not there was substantial competent evidence to support the findings of the Board". Johnson v. Chrysler Corp., Del., 213 A.2d 64 (1965). Substantial evidence is required and not just any evidence. M. A. Hartnett, Inc. v. Coleman, Del., 226 A.2d 910 (1967).

The claimant testified that he slipped on an oil slick at G.M.'s plant and fell, causing at the time a slight "kink" or catch in his lower back. The next day his back grew increasingly painful. Visits to a chiropractor every other day for a period of several weeks brought him temporary relief but did not cure the problem. During this time he continued to work despite substantial discomfort. Then, approximately a month after his fall, the plant closed down for the annual change over to the new models. When the plant resumed operations, claimant returned to his job but was unable to work. After two or three hours at the plant he went home. Several visits to a Doctor Reno proved unsatisfactory. Finally claimant consulted with a Dr. Balin, who recommended hospitalization. Claimant was in the hospital from August 21, 1961 until September 2, 1961. Thereafter, under doctor's orders, he remained home. Sometime in January he "lurched" while walking and required further hospitalization, this time from January 21 to January 26, 1962. On February 6, 1962, he returned to work under certain physical restrictions.

Dr. Balin testified that claimant's injury was objectively manifest, and, based on the foregoing facts, that it was caused by claimant's fall. G.M. does not dispute the existence of an injury, but it does contend that Dr. Balin's testimony with respect to cause must be disregarded as based on erroneous information. This alleged erroneous information consists of claimant's failure to inform Dr. Balin of a prior back injury which he suffered in May, 1961. The facts regarding a May injury are far from clear. Claimant admits to straining the upper part of his back in May, a condition which he claims promptly healed. He does not admit to injuring his lower back then. G.M. introduced into evidence a note from the chiropractor dated May 22, 1961, requesting light duty due to a problem which claimant was having with the lumbo sacral region of his back. The Board admitted the note for the purpose

of showing that claimant had requested light work in May due to a back difficulty, but only on condition that the contents of the note be disregarded as hearsay. Moreover, G.M.'s plant physician testified that when claimant delivered the chiropractor's note he had complaints in the cervical and sacral regions, which of course are distinct from the lumbo region where both claimant's doctors placed the fall related injury.

■ It is curious that the plant physician's records as of May also mention a fall on an oil slick, whereas claimant testified that such fall did not occur until the middle of June. Such a contradiction raises doubts regarding the claimant's credibility. However, the function of this Court is merely to determine if there is *sufficient evidence to justify the Board's* conclusions. The incompetency of the chiropractor's note as hearsay, the testimony of G.M.'s physician that the May injury related to the cervical and sacral regions, together with claimant's testimony regarding the location of his May injury offer substantial grounds for concluding that Dr. Balin did base his medical opinion on accurate information.

Claimant's second physician, Dr. Eskey, agreed with Dr. Balin that the cause of claimant's back difficulties was his fall at the plant. Ample evidence therefore exists for the Board's determination that claimant suffered a compensable accident on June 15, 1961 which caused his unemployment from August 8, 1961 to February 6, 1962, and resulted in various medical expenses.

■ G.M.'s second ground for appeal, involving the Board's award of attorney's fees, is likewise without merit. As G.M. admits, the general rule is that the law as it exists at the time when costs are taxed, rather than the law as it existed when the action was commenced, governs the question of what costs will be allowed, unless a contrary intent clearly appears from the

statute. 20 Am.Jur.2d, Costs, § 7. 19 Del. C. § 2127 provides:

"(a) A reasonable attorney's fee in an amount not to exceed 30% of the award or $2250, whichever is smaller, shall be allowed by the Board to any employee awarded compensation under this chapter and Chapter 23, and taxed as costs against a party.

(b) No compensation, other than the fee provided by subsection (a) of this section, may be received by an attorney for services before the Board; provided, however, that this limitation shall not apply to any fee for services rendered by an attorney or appeal from an award or a denial of an award by the Board."

This provision was in effect on the date of the Board's award. Nevertheless, G.M. maintains that the statute may not be retroactively applied because it does not apply to defendants and plaintiffs alike. The basis for this reasoning is found in 20 Am.Jur.2d, Costs, § 7:

"The general rule giving retrospective operation to a costs statute, absent a clearly indicated contrary intent, has been limited to instances where the purpose and effect of the statute involved is merely to regulate cost, and the statute *applies alike to all plaintiffs and to all defendants* in specified judicial proceedings." (Emphasis added.)

The requirement of like application, however, does not mean that both defendants and plaintiffs must have equal potential benefit from the statute. It simply means that the statute must apply in the same way to all plaintiffs and to all defendants as opposed to applying one way to some plaintiffs or defendants and another way to others. Section 2127 meets this requirement.

■ G.M. also maintains, however, that § 2127(b) introduces a new concept of complete control by the Board of fees charged for legal services which cannot

be retroactively applied without unconstitutionally affecting retainer agreements entered by attorneys and clients prior to this new legislation. Since part of § 2127 cannot be retroactively applied, the same must be said of the whole, or so the argument runs. The fact is, however, that § 2127(b) does not introduce any new concept of Board control. Section 2126 has long provided that "Fees of attorneys and physicians for services under the provisions of Part II of this title shall be subject to the approval of the Board". All attorney-claimant retainer agreements are thus entered subject to Board approval. Section 2127(b) merely directs the Board to disapprove fees in excess of the stated amount. Consequently retroactive application of § 2127 will not work any unconstitutional impairment of contracts.

Finally, G.M. contends that the Board erred in not requiring a hearing on the question of attorney's fees. Such a contention fails to acknowledge the distinction between that portion of an attorney's fee which may be taxed to the employer as costs, and the actual full fee which claimant has agreed to pay his counsel. With this full fee the employer has no concern. The matter is strictly between the claimant, his attorney and the Board. Rule 17(a) of the Board [1] in no way suggests the necessity of a hearing at which the employer may be present. Since G.M. has offered no evidence that the Board abused its discretion in taxing a maximum of $2250 against it for claimant's attorney's fees, earned over a period of four or five years during which two hearings have been held and two appeals taken involving a difficult factual situation and uncertain points of law, the Board's award of costs will be sustained.

G.M.'s third ground for appeal actually amounts, by G.M.'s own characterization, to an effort to preserve for appeal its position on the previously decided question regarding statute of limitations. Assuming without deciding that the Board properly admitted into the record, after the Court's decision on the matter, a letter written by an attorney on behalf of claimant prior to claimant's unsuccessful efforts to file a compensation petition, nevertheless, that letter does not warrant any different conclusions. It is directed to G.M.'s physician regarding the harmonization of claimant's restrictions as prescribed by his doctors and his plant duties as set forth by G.M. Nothing therein gives rise to any inference that claimant informed this attorney of his intention to file a compensation petition, or received advice on such a subject. The fact that claimant consulted with an attorney regarding his duties at the plant does not mean that he was "represented" for other purposes when he filed his petition.

Accordingly, all of the Board's findings and awards from which G.M. has appealed must be sustained.

The same cannot be said for the finding from which claimant has appealed. Both claimant's physicians testified that his fall aggravated a pre-existing degenerative condition which is present to some extent in everyone. They testified, moreover, that his obesity contributed to the seriousness and permanency of the injury. However, as stated in General Motors Corp. v. McNemar, Del., 202 A.2d 803 (1964):

"* * * the fact that a claimant suffers from a pre-existing physical defect will not preclude the award of compensation if the conditions of employment cause a sudden and violent acceleration and deterioration of the defect. * * *"

This describes the claimant's case exactly. Therefore, the noncompensable factors mentioned in the Board's decision must be

---

1. Rule 17(a) provides: "Upon application to the Board for attorney's fees, the services rendered the injured employee, as well as the time spent and the uniqueness of the case, will be considered in determining the allowance of attorney's fees."

of a different nature than pre-existing physical defects.

In February, 1963, claimant was injured in an automobile accident. The medical testimony is uncontradicted that this injury had no effect on claimant's lower back, and that it was completely healed when claimant returned to work in October. The testimony likewise is uncontradicted that claimant could not do his job at the plant when he returned because his co-workers would not relieve him of his heavy lifting duties, as they had prior to the automobile accident. It is clear from the record that his inability to work at the job provided for him in October, 1963, was due solely to back difficulties caused by his fall of June 15, 1961. He had been able to hold that job during the previous year only because of the compassion of the other workers.

■ There is, however, substantial evidence that claimant's inability to work at less demanding jobs subsequently offered to him by G.M. was not due to his back. G.M. personnel testified that two jobs were provided for claimant involving a minimum of physical effort. Claimant himself testified that he thought he was doing "all right" on these jobs, although his back brace bothered him on one of them, due to the necessity of bending over. This facet of the job was eliminated, however, when he complained about it. Since his inability to "keep it up" is far from conclusively related to his back injury, the Board properly denied compensation from such time as a job compatible with his back restrictions was made available to him.

■ The Board's decision leaves unresolved the question of compensation for the permanency of claimant's injury. Both of claimant's physicians testified that his injury was permanent. Although neither of them attributed a set percentage to claimant's disability, this is immaterial because the Board, rather than any doctor, should perform that function. The entirety of the testimony before the Board, medical and otherwise, provides an ample basis for making an award. The case should be remanded for further proceedings.

It is so ordered.