**Elpidia S. ORTIZ, Appellant,**

v.

**UNEMPLOYMENT INSURANCE APPEAL BOARD and Scott Packing Company, Appellees.**

Superior Court of Delaware, New Castle.

March 28, 1973.

Elwyn Evans, Jr., Wilmington, for appellant.

John C. S. Frank, of Herlihy & Herlihy, Wilmington, for appellees.

OPINION

CHRISTIE, Judge.

Elpidia S. Ortiz (claimant), formerly employed by Brown & Scott Packing Company (employer), has appealed from a decision of the Unemployment Insurance Ap-

peal Board (Board) affirming denial of unemployment compensation benefits by a claims deputy and by a referee. The issue raised in the appeal is whether the employer by tolerating claimant's poor attendance thereby waived its right to discharge claimant for just cause when his absenteeism and tardiness persisted.

Claimant was hired by Brown & Scott as a machine operator in November of 1970. In mid-1971, claimant's wife was found to be seriously ill with a malignancy that impaired her ability to perform housework and care for the Ortiz children. It was necessary for her to go to the hospital on a regular and frequent basis for treatment. Prior to diagnosis of the wife's illness, claimant's attendance was very good but afterward, due to the need to care for his wife, his attendance deteriorated markedly. During a period of about six or ten months after his wife became ill claimant was absent 39 days and late on 41 other occasions.

The employer seems to have been aware of the reasons for Ortiz's poor attendance and was patient with the situation but the employer appeared to have a mental reservation or an unexpressed requirement that claimant must take effective steps to alleviate the problem by obtaining some help at home. I will assume, for purposes of this appeal, that the employer's requirement was not communicated to claimant and that claimant was not expressly warned that he would be discharged if his poor attendance persisted.

In August of 1971, the employer assisted the claimant by writing to the State Division of Social Services requesting that a "mother's helper" be assigned to the Ortiz family to help claimant's wife take care of the house and children and to care for Mrs.

Ortiz. After much delay the helper was finally assigned in mid-January of 1972. To accommodate the work hours of the helper, the employer changed claimant's working hours which had been 6:00 a. m. to 2:00 p. m. to the more convenient hours of 7:30 a. m. to 3:00 p. m.

Despite the adjustments in his schedule, claimant requested that he be given Wednesdays off to accompany his wife to the hospital. The employer refused this request. It also appears that the helper was late on some days and on other days she failed to show up. For these reasons, claimant was absent without excuse on 8 days and late on 8 other days between mid-January and February 29, 1972. He was discharged by his employer on February 29, 1972.

The referee found that claimant had been discharged for "just cause" within the meaning of 19 Del.C. § 3315(2) * on the basis of absenteeism and tardiness and upheld the claims deputy's denial of compensation. At the hearing before the referee, Brown, the president of Brown & Scott, stated that claimant was discharged for inability to produce his work. The Board, after a brief hearing at which no significant new evidence was produced, affirmed the decision of the referee and adopted his findings and conclusions as its own.

On appeal from the Unemployment Insurance Appeal Board, the Board's findings of fact are conclusive, if supported by substantial competent evidence and in the absence of fraud. 19 Del.C. § 3323(a); Johnson v. Chrysler Corp., Del.Supr., 213 A.2d 64 (1963); M. A. Hartnett, Inc. v. Coleman, Del.Supr., 226 A.2d 910 (1967).

■ The general rule is that poor attendance will support a finding of just

---

* This section provides in pertinent part:
    "§ 3315. Disqualification for benefits
    "An individual shall be disqualified for benefits—
        *    *    *    *    *
    "(2) For the period of unemployment next ensuing after an individual has been discharged from his work for just cause in connection with his work. Wage credits earned in such work, if employment under this title, shall not constitute benefit wages in connection with sections 3349–3356 of this title.

cause for discharge of an employee. Weaver v. Employment Security Comm., Del. Super., 274 A.2d 446 (1971). The Weaver opinion, however, went on to state that where an employer had tolerated previous acts of misconduct of similar severity without warning, a single irresponsible failure of the employee to heed his employer's instructions will not support a finding that just cause existed for dismissal.

The term "just cause" as used in 19 Del.C. § 3315(2) has been defined to mean "a wilful or wanton act in violation of either the employer's interest or of the employee's duties or of the employer's expected standard of conduct . . .". Abex Corp. v. Todd, Del.Super., 235 A.2d 271 (1967); Coleman v. Department of Labor, Del.Super., 288 A.2d 285 (1972).

From the record, it appears that the Board had before it ample evidence that claimant's absenteeism and tardiness was intentional and knowing and not accidental or inadvertent. Moreover, it is clear that claimant's poor attendance was attributable to his caring for his ailing wife and not to any condition connected with his employment.

■ The mere fact that an employee is not discharged forthwith because of an act amounting to misconduct does not necessarily constitute a condonation of such misconduct, particularly where the employee is warned that he will be discharged for such conduct in the future. 81 C.J.S. Social Security and Public Welfare § 162, p. 247. It cannot, therefore, be said that as a matter of law Brown & Scott is to be held to have condoned claimant's poor attendance.

■ In most cases in which an employee has been discharged for substandard attendance, the employer has tolerated a certain amount of absenteeism or tardiness before discharging him. Courts have more readily upheld a finding of just cause or its statutory equivalent in cases where the employee has disregarded the employer's warning. See Weaver v. Em-

ployment Security Comm., supra; Shanor v. Unemployment Comp. Bd. of Rev., 188 Pa.Super. 301, 146 A.2d 336 (1958); Viale v. Unemployment Comp. Bd. of Rev., 183 Pa.Super. 361, 133 A.2d 588 (1957). But, prior warning or notice to the employee of the consequences of his act is not a prerequisite to discharge for poor attendance. Coleman v. Department of Labor, supra. See also Hohnstock v. Unemployment Comp. Bd. of Rev., 196 Pa.Super. 500, 175 A.2d 167 (1965).

■ The term "condone" is most commonly used in connection with divorce law, but generally speaking, the word means to pardon or forgive a fault or offense. Webster's Third New International Dictionary (1964). It is essentially retrospective, not prospective, in nature and does not necessarily constitute a consent to subsequent similar misconduct. In divorce law, condonation is forgiveness with the implied condition that the misconduct will not be repeated. See Hilbert v. Hilbert, 168 Md. 364, 177 A. 914 (1935). In like manner, condonation of an employee's misconduct by an employer results in a waiver by the employer of the acts of misconduct which were forgiven as grounds for discharge. But, implicit in the employer's forgiveness is the condition that the misconduct is not to be repeated. If the misconduct is repeated, the condition on which condonation rested has been violated and the employer is restored to his former right to discharge the employee for the misconduct.

■ In the instant case, the claimant's employment record is separable into two distinct and identifiable phases: The period of roughly six months prior to mid-January of 1972, when his working hours were adjusted and the succeeding six weeks which ended in his dismissal from employment. During the first period claimant was absent 39 times and tardy 41 times. In the second period, he was absent on not more than 8 days and late 8 times. Implicit in the change in claimant's work hours was the employer's expectation that he would con-

form his attendance to the rules especially set up for him. Viewed in the light of this background, the Board could reasonably have concluded that employer had not tolerated Ortiz's substandard attendance after the new work schedule had been set up in mid-January and that just cause for his dismissal was present.

The policy of the law favors amicable resolution of labor-management problems. The fact that the employer did more than merely tolerate claimant's poor attendance and took affirmative steps to aid him during a most difficult time, should not now be held against the employer. The Court is reluctant to hold, as urged by claimant, that employer's generous and humanitarian conduct toward Ortiz prevented it from discharging him when he continued to violate the employer's attendance requirements. Extended to its logical extreme, the rule of condonation contended for by claimant might tend to discourage employers from tolerating or forgiving minor acts of misconduct lest the employer later be held to have waived its right to discharge an employee who persisted in such misconduct.

The Court's decision is not inconsistent with that in Weaver v. Employment Security Comm., *supra*. In that case, the Court held that a single act of misconduct did not constitute just cause for discharge where the employer had tolerated acts of similar severity. Here, the misconduct was continuing in nature and the employer's concern about the problem had been demonstrated.

The Court finds it unnecessary to decide the objection raised by claimant to the admission of certain evidence as to a warning alleged to have been given to claimant. The element of warning is not regarded as determinative in this case.

There being substantial evidence to support findings of fact, the decision of the Board is affirmed.

It is so ordered.

