# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ALVIN HOOTEN,                           :
                                        :
                                        :
                                        :     C.A. No. K22A-05-001 JJC
            Appellant,                  :
                                        :
    v.                                  :
                                        :
BLUE HEN DISPOSAL,                      :
                                        :
                                        :
            Appellee.                   :
                                        :
                                        :

Submitted:  November 15, 2022
Decided:  February 1, 2023

## MEMORANDUM OPINION

*Upon Consideration of Appellant's Appeal from the Decision of the Industrial Accident Board – AFFIRMED*

Walt F. Schmittinger, Esquire, SCHMITTINGER AND RODRIGUEZ, P.A., Dover, Delaware, *Attorney for Appellant.*

Nicholas E. Bittner, Esquire, HECKLER & FRABIZZIO, Wilmington, Delaware, *Attorneys for Appellee.*

**Clark, R.J.**

Appellant Alvin Hooten appeals an Industrial Accident Board (the "IAB" or "Board") order that terminated his total disability benefits. Mr. Hooten suffered a work-related neck injury in a December 2020 motor vehicle accident. As a result, he received total disability benefits. Then, in late 2021, his employer, Appellee Blue Hen Disposal, filed a petition to terminate those benefits. It alleged that his condition had improved to the point that he had again become employable.

Before the hearing, Mr. Hooten became involved in a second, non-work-related car accident in February 2022 (the "intervening accident" or the "new accident"). Blue Hen nevertheless maintained that he could return to work, albeit in a reduced physical capacity.

The IAB then held a hearing in March 2022 and oral argument in April. After the hearing and argument, the Board terminated Mr. Hooten's total disability benefits. When doing so, it found him to be employable, full-time, though at a sedentary level.

In this appeal, Mr. Hooten contends that the IAB committed an error of law when it terminated his benefits based upon testimony from a medical expert who did not examine him after the intervening accident. In response, Blue Hen contends that the Board made no error. Blue Hen also contends that substantial evidence supported the Board's decision that Mr. Hooten (1) was employable before the intervening accident, and (2) remained employable, from the perspective of his work-related injuries, after the intervening accident.

For the reasons below, Mr. Hooten's attempt to frame his appeal as a challenge to an error of law is incorrect. Rather, his claims on appeal are properly viewed as a challenge to the sufficiency of the evidence to terminate his total disability benefits. When viewed in that light, the Board's order must be affirmed because substantial evidence supported the IAB's decision.

2

## I.  FACTS OF RECORD AND PROCEDURAL BACKGROUND

On December 1, 2020, Mr. Hooten suffered a neck injury in a work-related accident while driving a trash truck for Blue Hen.  Shortly thereafter, Mr. Hooten had surgery to address fractured C4 and C5 vertebrae.  The parties do not dispute that the work accident initially caused him total disability.  As a result, Blue Hen's carrier paid him those benefits for more than a year.

In November 2021, Blue Hen petitioned the IAB to terminate his total disability benefits.  By that point, it contended that Mr. Hooten could return to work and relied primarily on two examinations performed by Dr. Andrew Gelman, an orthopedic surgeon:  one on September 1, 2022, and another on January 25, 2022.[1] As of January 25, 2022, Dr. Gelman opined that Mr. Hooten could return to medium duty, full-time employment.[2]

The Board then set the hearing for March 23, 2022, but the intervening accident happened shortly beforehand, on February 3, 2022.  The proximity of the new accident to the hearing day created the central issue in this appeal.  Namely, Mr. Hooten's appeal turns on whether the Board permissibly relied upon Dr. Gelman's opinion, even though he did not examine Mr. Hooten after the new accident and before the hearing.

At the hearing, the IAB considered the parties' stipulation of facts, Mr. Hooten's testimony, and the testimony of three expert witnesses.  In Blue Hen's case-in-chief, it presented Dr. Gelman's testimony by deposition.  In addition, Blue Hen presented the testimony of Dr. Barbera Riley, a vocational case manager and certified rehabilitation counselor.  In response, Mr. Hooten testified and presented the testimony of his treating physician, Dr. Sandeep Mann.

---

[1]Tr. Dr. Gelman, IAB Hearing No. 1505754, Emp. Ex. 1 [hereinafter "Tr. Gelman"], at 6.
[2] *Id*. at 37, 68–69.

First, Dr. Gelman testified that he examined Mr. Hooten twice before the intervening accident. Based upon those examinations, he believed that Mr. Hooten could return to work.[3] In fact, he believed Mr. Hooten was fit to return to medium duty.[4] Dr. Gelman further testified that Mr. Hooten's intervening accident did not change his opinion. According to Dr. Gelman, Mr. Hooten's medical records supported two findings: (1) Mr. Hooten's neck condition had improved by January 2022 to the point that he could return to work; and (2) the intervening accident left his neck in the same condition as before. As a basis for the latter opinion, Dr. Gelman explained that Dr. Mann recorded his neck pain at a three, on a scale of ten, the day before the intervening accident.[5] Likewise, Mr. Hooten told Dr. Mann his neck pain remained at a three out of ten at office visits three weeks and one month after the intervening accident.[6]

After Blue Hen presented Dr. Gelman's deposition testimony, it presented live testimony from its vocational rehabilitation expert, Dr. Riley. She based her opinions on a vocational assessment and a labor market survey performed before the intervening accident. She conceded that she had not considered any potential change to Mr. Hooten's employability after the intervening accident; rather, she relied on Dr. Gelman's opinion that Mr. Hooten could return to work.[7] She identified eight available jobs in the area that matched Mr. Hooten's work restrictions.[8] She testified that the average weekly wage of those jobs was $681.80. [9]

After Blue Hen rested, Mr. Hooten moved for a directed verdict. He based his motion on Delaware decisional authority that recognizes that an aggravation of

---

[3] *Id*. at 37.
[4] *Id*.
[5] *Id*. at 15.
[6] *Id*. at 19.
[7] IAB Hearing No 1505754 Transcript [hereinafter "Tr."], at 41.
[8] *Id*. at 47.
[9] *Id*. at 49.

a work-related injury remains the responsibility of the employer.[10]    He further contended that the IAB could assign no weight to Dr. Gelman's opinions because he did not examine Mr. Hooten after the intervening accident.

In response, Blue Hen told the Board that Mr. Hooten had not provided it fair notice that he had been in a new accident.[11]   Blue Hen further relied upon prior IAB decisions that permitted a doctor to provide an opinion based upon a record review only.  In that vein, Blue Hen emphasized that Dr. Gelman had reviewed all available medical records of treatment after the new accident.  Under the circumstances, Blue Hen contended that the IAB permissibly accepted his opinion.

After recessing to consider the matter, the IAB returned and denied the motion.  The Board explained its reasoning and emphasized that it did so after considering Dr. Gelman's and Dr. Riley's testimony in the light most favorable to Blue Hen.[12]

Mr. Hooten then presented the deposition of his treating physician, Dr. Sandeep Mann.   Dr. Mann, an internal medicine doctor, treated Mr. Hooten both before and after the intervening accident.[13]  He explained that Mr. Hooten could never return to commercial driving.[14]   At one point, he opined that Mr. Hooten

---

[10] *See Hudson v. E.I. DuPont De Nemours*, 245 A.2d 805, 809 (Del. Super. 1968) (recognizing that an injury is compensable if it follows as a direct and natural result of the primary injury, while also recognizing that a subsequent injury resulting from an intervening cause is not compensable); s*ee also Barkley v. Johnson Controls*, 2003 WL 187278, at *2, 3 (Del. Super. Jan. 27, 2003) (confirming the rule that an employer is liable for subsequent injuries if there is no separate intervening event that breaks the causal chain connecting the first injury).

[11] *See* Del. I.A.B. R. 9 (providing that the petitioner in a case must complete the Pre-Trial Memorandum form and send it to the respondent's counsel.  The form must include the name of any potential witness(es), a complete statement of what the petitioner seeks and alleges, a copy of bills at least 30 days before the hearing if applicable, and a complete statement of defense to be used by the opposing party).

[12] Tr. at 79.

[13] Tr. Dr. Mann, IAB Hearing No. 1505754, Cl. Ex. 1 [hereinafter "Tr. Mann"], at 6.

[14] *Id*. at 13.

could not work in any capacity, either before or after the intervening accident.[15] Elsewhere, however, Dr. Mann testified that he had not, and could not, evaluate whether Mr. Hooten could perform sedentary duty.[16] In fact, he acknowledged that he had not been trained to perform functional capacity evaluations.[17] Nor could he provide an opinion regarding the degree of Mr. Hooten's, or any patient's, work disability.[18] Dr. Mann also confirmed that Mr. Hooten rated his neck pain at three out of ten the day before the new accident. By February 22, 2022, Mr. Hooten reported to Dr. Mann that his neck pain had returned to the same level.[19] Mr. Hooten's low back pain, never claimed as an area of compensable injury, had become the major issue.[20]

Mr. Hooten then testified. He explained that Dr. Mann was his primary treating physician who treated him throughout 2021.[21] Mr. Hooten also acknowledged that by June 2021, he had been discharged from physical therapy.[22] Furthermore, he told the Board that he had applied for social security disability,[23] that he had "pushed off" Dr. Mann's recommendation that he undergo a functional capacity evaluation, and that he would not return to work at a production or desk job.[24]

The hearing evidence also included references to Mr. Hooten's last visit with Dr. Mann before the IAB hearing – on March 2, 2022.[25] There, Dr. Mann noted

---

[15] *Id.* at 18, 28–29.
[16] *Id.* at 34.
[17] *Id.* at 33.
[18] *Id.* 36.
[19] Tr. Mann, at 38.
[20] *Id.*
[21] Tr. at 104.
[22] *Id.* at 102.
[23] *Id.* at 15.
[24] *Id.* at 112–113.
[25] Tr. Mann, at 38.

that Mr. Hooten had a limited range of motion in his neck, yet still rated his pain as a three out of ten. At that time, Dr. Mann reissued a six-month work restriction until September 1, 2022 (specific only to his CDL job) and scheduled another functional capacity evaluation to determine whether he could perform alternate jobs.[26] While Dr. Mann believed that Mr. Hooten could not return to his previous job within that six-month period, he conceded that Mr. Hooten should be evaluated for a potential return to work at some level.[27]

## II. THE IAB'S DECISION

In its written decision, the IAB explained why Mr. Hooten could return to work in a sedentary capacity. First, it explained that it found Dr. Gelman's testimony credible.[28] In contrast, it discounted much of Dr. Mann's testimony because of inconsistencies between his opinions and Mr. Hooten's testimony.[29] The Board also had difficulty with Dr. Mann's opinions because he admitted his inability to opine regarding whether Mr. Hooten could return to restricted duty.[30] In fact, Dr. Mann admitted at one point that he "may be able to do some kind of job [and that he] should be evaluated to work in some other capacity."[31]

The IAB accepted Dr. Gelman's and Dr. Riley's testimony over Dr. Mann's. When doing so, it rejected Mr. Hooten's argument that Dr. Gelman's opinion had no foundation as a matter of law. On the other side, the Board discounted Mr. Hooten's credibility because he (1) had refused orders for functional capacity

---

[26] *Id*. at 39–40.
[27] *Id*. at 36.
[28] *Hooten v. Charlie Waste Services,* IAB Hearing No. 1505754, at 21–22 (April 19, 2022) [hereinafter "IAB Order"].
[29] *Id*. at 21.
[30] *Id.* at 22.
[31] Tr. Mann, at 36.

evaluations, (2) contradicted himself in part, (3) made no efforts to find a job, and (4) told them he would refuse any work other than commercial driving.

Based on this evidence, the IAB terminated Mr. Hooten's total disability benefits as of April 19, 2022.[32] In its decision, the Board explained why Mr. Hooten was not a displaced worker. Because Mr. Hooten had work experience in the manufacturing industry and in local government, the Board found his work skills sufficiently transferrable to make him employable in a field that would fit his sedentary restriction.

After terminating his total disability payments, the IAB awarded him partial disability benefits.[33] The Board calculated his current earning power based upon the only labor market survey presented at the hearing. When comparing that to his weekly wage at the time of the injury, the Board found his current diminished earning capacity to be $15.93 per week because of the work accident.[34] That, in turn, drove the IAB's award of $10.62 per week in partial disability compensation.[35] Since Mr. Hooten technically prevailed at the hearing given the award of partial disability, the IAB awarded him attorneys' fees and a medical witness fee.

## III.   THE PARTIES' ARGUMENTS

Mr. Hooten challenges the IAB's finding that he was employable in any capacity at the time of the hearing. Specifically, he argues that the Board committed an error of law when it relied on Dr. Gelman's opinion because Dr. Gelman did not examine him after the intervening accident. For that reason, he contends that Dr.

---

[32] IAB Order, at 26.
[33] *Id*. at 27.
[34] *Id*.
[35] *Id*.

Gelman's opinion deserves no weight as a matter of law. Under his theory of legal error, he asks the Court to review the Board's decision *de novo*.

In what is more of an alternative argument, Mr. Hooten challenges whether the record contains substantial evidence to support the Board's decision. He contends that the great weight of the evidence demonstrated that the intervening accident aggravated his prior low back pain and shoulder injuries.

In response, Blue Hen contends that the Board permissibly accepted Dr. Gelman's opinion even though he did not examine Mr. Hooten after the intervening accident. In support, Blue Hen emphasizes Delaware case law that permits a doctor to rely on a medical record review only. Furthermore, Blue Hen contends that Mr. Hooten did not comply with IAB disclosure rules because he provided no notice that there was a new accident at least thirty days before the hearing. Finally, Blue Hen contends that because Mr. Hooten had claimed only a neck injury in the workers' compensation case, he could not, for the first time, claim additional injuries in the termination hearing.

## IV. STANDARD OF REVIEW

On appeal, the Superior Court must determine whether the IAB committed an error of law and whether the record contains substantial evidence to support its decision.[36] The Court's standard of review of an alleged error of law is *de novo*.[37] If an appellant challenges the sufficiency of the evidence to support IAB factual findings, however, the Court applies a more deferential standard. In those cases, it

---

[36] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1221 (Del. 2015).
[37] *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Super. Mar. 24, 2008) (citing *Digiacomo v. Bd. of Pub. Educ.*, 507 A.2d 542, 546 (Del. 1986)).

determines whether the record contains substantial evidence to support the Board's factual findings.[38]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[39] Reviewing the record for substantial evidence requires the Court to review the record for "more than a scintilla but less than a preponderance of the evidence."[40] The Court must view the facts in the light most favorable to the party that prevailed below.[41] Furthermore, the Court cannot determine questions of credibility or make its own factual finding.[42] Absent an error of law, the Board's decision must be upheld unless it abused its discretion.[43] A Board abuses its discretion "when its decision exceeds the bounds of reason in view of the circumstances."[44]

## V.    ANALYSIS

Although Mr. Hooten frames the central issue in his appeal as a challenge to an error of law, this case requires the Court to evaluate the sufficiency of the evidence. For the reasons discussed below, the IAB did not commit legal error when it relied on Dr. Gelman's testimony. Furthermore, the record contains substantial evidence to support the Board's findings.

---

[38] *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993).

[39] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

[40] *Washington v. Delaware Transit Corp.*, 226 A.3d 202, 210 (Del. 2020) (citation omitted).

[41] *Chudnofsky v. Edwards*, 208 A.2d 516, 518 (Del. 1965).

[42] *Bullock*, 1995 WL 339025, at *2 (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[43] *Hoffecker v. Lexus of Wilmington*, 36 A.3d 349, 2012 WL 341714, at *1 (Del. Feb. 1, 2012) (TABLE).

[44] *Id.*

## A. The Board committed no legal error when relying on Dr. Gelman's expert opinion.

Mr. Hooten first claims that the IAB erred as a matter of law when it relied on Dr. Gelman's "out-of-date" opinion. He contends that an expert cannot opine that the Board should terminate disability benefits if the doctor did not examine the claimant after a significant intervening event, such as a new accident or surgery. Mr. Hooten is incorrect for two reasons.

First, Delaware decisional law recognizes that a medical expert can provide an opinion about a patient's condition without physically examining that patient.[45] If Delaware courts, that apply strict rules of evidence, recognize that a doctor has an adequate foundation to offer such an opinion, the IAB commits no legal error when it accepts one.[46] Moreover, Dr. Gelman relied only in part on a record review. He also examined Mr. Hooten on September 1, 2021, and on January 25, 2022.[47] He also reviewed Mr. Hooten's medical records, including the records of Dr. Mann, First State Orthopedics, ATI, and those from the emergency room visits. They described all relevant treatment and observations of Mr. Hooten's condition, from both before and *after* the intervening accident.[48] In fact, Dr. Gelman relied heavily on Dr. Mann's records that recognized Mr. Hooten's consistent pain level from both before and after the intervening accident.

---

[45] *Norman v. All About Women, P.A.*, 193 A.3d 726, 731 (Del. 2018); *see Delmarva Power & Light v. Stout*, 380 A.2d 1365, 1369 (Del. 1977) (finding that a physician's expert opinion was relevant and admissible even though he never examined the plaintiff or consulted with the plaintiff's treating doctor); s*ee also State v. Dale,* 2021 WL 5232344, at *5 (Del. Super. Nov. 10, 2021) (recognizing that a physician may reach a reliable diagnosis without performing a physical examination); *State v. McMullen*, 900 A.2d 103, 117–18 (Del. Super. 2006) (providing that so long as a physician employs an objective diagnostic technique, it is acceptable for the physician to arrive at a different diagnosis performed by another medical practitioner).

[46] *See* Del. I.A.B. R. 14 (recognizing that the Board, as most administrative bodies, has the discretion to apply relaxed rules of evidence).

[47] Tr. Gelman, at 6.

[48] *Id.*

Second, fault for Blue Hen's inability to have a third defense medical examination fairly rests upon Mr. Hooten's failure to timely notify Blue Hen of an intervening accident. Here, the IAB's decision did not rely directly on an IAB procedural rule when rejecting Mr. Hooten's position. Nevertheless, one of its procedural rules independently resolves the matter because Blue Hen received insufficient notice under the rule. IAB Rule 9(C) provides, in part, that a party's pretrial memorandum submission must provide the following within thirty days before the hearing:

> a complete statement of what the petitioner seeks and alleges[,and] a complete statement of the defenses to be used by the opposing party.[49]

The IAB refers to this rule as "[t]he thirty-day notice requirement," and recognizes the intent of the rule is to provide adequate notice to both parties so they can prepare for the upcoming hearing.[50]

Here, Mr. Hooten claimed no aggravation of his neck injury in the pretrial memorandum.[51] Nor did he seek, at any time, to amend the pretrial memorandum. Unfortunately, neither the IAB nor the parties included the pretrial memorandum in the appellate record. Nor did they provide any prior agreement on compensation, or prior IAB decision, that addressed Mr. Hooten's claims from before the termination proceedings. Nevertheless, Blue Hen contended, both before the IAB

---

[49] Del. I.A.B. R. 9(C)(2) –(3).

[50] *See Torres v. Allen Family Foods*, 672 A.2d 26, 31 (Del. 1995) (providing that the IAB may not relax rules designed to ensure the fairness of the proceedings); *see also Abrahams v. Chrysler Group, LLC*, 2012 WL 1744270, at *3 (Del. May 11, 2012) (recognizing that the IAB pre-trial memorandum requirements must be followed to ensure fairness); *Fountain v. MacDonald's*, 2016 WL 3742773, at *7 (Del. Super. Jun. 30, 2016) (affirming the IAB's preclusion of evidence because the opposing party did not disclose that evidence in the pre-trial memorandum).

[51] *See* Tr. at 70 (discussing Mr. Hooten's failure to identify any additional compensable injuries in a pre-trial memorandum submission); *see also id*. at 99 (including counsel for Blue Hen's argument that Mr. Hooten failed to notify it in the pre-trial memorandum that there was an intervening accident).

12

below and on in its briefing on appeal, that the only recognized work injury was to Mr. Hooten's neck. At no stage has Mr. Hooten refuted Blue Hen's contention that he failed to address the new accident in his pretrial memorandum submission. As a result, the record on appeal supports only the following: (1) Mr. Hooten declined to notify Blue Hen, in a timely manner, that he had an intervening accident; and (2) Mr. Hooten failed to provide notice to Blue Hen that he sought benefits for injury to a body part other than to his neck.

In support of his appeal, Mr. Hooten contends that two IAB decisions required the Board to grant his directed verdict motion: *Luettke v. Central Delaware Endoscopy,*[52] and *Bailey v. Easy Lawn Supply.*[53] Mr. Hooten presents the cases in his brief as though they were controlling law. To the contrary, on appeal, prior IAB decisions provide highly persuasive authority given the IAB's expertise in these matters. In limited circumstances, they may also provide the basis for demonstrating the denial of a litigant's procedural due process rights.

As to the latter, black letter administrative law recognizes that an agency generally must follow its own case-decision precedent.[54] If it does not, the failure to do so *may* violate a litigant's procedural due process rights. Namely, an agency is bound by its prior decisions when those decisions provide clear statements of law or policy, unless the agency explains why it has changed its position.[55] In an administrative appeal, the Court must review an agency decision for arbitrariness and capriciousness.[56] If an agency fails to follow its own precedent, and that

---

[52] *Luettke v. Central Delaware Endoscopy*, IAB Hearing No. 1310568 (Jun. 23, 2008).
[53] *Bailey v. Easy Lawn Supply, Inc.*, IAB Hearing No. 1285073 (Nov. 13, 2009)
[54] *See Wilson v. Gingerich Concrete & Masonry*, 2022 WL 701632, at *8 (Del. Super. Mar. 9, 2022) (recognizing that an agency must explain why it deviated from its own precedent, if that precedent establishes a definitive standard or policy); *see also* Charles H. Koch, Jr. & Richard Murphy, Impact of Administrative Decisions, 2 Admin. L. & Prac. § 5:67 (3d ed. 2022) (explaining that "consistency is a fundamental force in administrative law").
[55] *Wilson*, 2022 WL 701632, at *8.
[56] *Delaware Transit Corp. v. Roane*, 2011 WL 3793450, at *5 (Del. Super. Aug. 24, 2011).

precedent provided a clear statement of policy or law, the agency acts arbitrarily and capriciously unless it explains why it changed its position.

Here, the Board's decision is consistent with both IAB decisions cited by Mr. Hooten so there is no inconsistency in the Board's approach. First, in *Luettke*, the employer's medical expert did not consider the employee's upcoming surgery scheduled for eight days after the Board hearing. Nevertheless, he testified that the IAB should terminate his total disability benefits.[57] Under those circumstances, the Board declined to afford the doctor's opinion any weight. As a result, it granted a directed verdict for the employee at the close of the employer's evidence.[58] Importantly, the doctor in the *Luettke* case did not even attempt to address what work restriction the employee would face after the upcoming surgery.

Second, the IAB also granted a directed verdict in the *Bailey* case. There, the employer's medical expert did not examine the employee after a surgery performed on the eve of the hearing.[59] In that case, the Board also rejected the doctor's opinion because of an inadequate foundation.[60] The IAB reasoned that because (1) the employer's medical expert did not examine the employee after the recent work-related surgery, and (2) the expert provided no basis for his *ipse dixit* opinion that the claimant was employable after the surgery, the medical expert's opinion should be afforded no weight.

*Luettke* and *Bailey* are distinguishable for several reasons. Unlike the employees in those matters, Mr. Hooten failed to provide sufficient notice of the new accident. Furthermore, neither of the physicians in those cases reviewed the claimant's post-surgery medical records, as Dr. Gelman did in Mr. Hooten's case.

---

[57] *Luettke*, IAB Hearing No. 1310568, at 2.
[58] *Id*.
[59] *Bailey*, IAB Hearing No. 1285073, at 2.
[60] *Id*.

In one sense, Mr. Hooten's post-intervening-accident medical records alone provided substantial evidence to support Dr. Gelman's opinions. Namely, they provided substantial evidence that the only work-related injury – the neck – had returned to the same point as when Dr. Gelman personally examined him in January. As a final distinguishing factor, both *Luettke* and *Bailey* involved claims that addressed only injuries that the Board had already recognized as compensable. Mr. Hooten seeks to interject claims addressing his shoulder and lower back.

In summary, the Board did not commit an error of law when it accepted Dr. Gelman's opinion. Rather, it accepted his opinion because he based it on two live examinations and a review of all relevant medical records. Because the Board did not err as a matter of law, the Court's inquiry turns to whether the record contained substantial evidence to support the Board's decision.

## B. The record contains substantial evidence to support the IAB's decision to terminate Mr. Hooten's total disability benefits.

In this case, Blue Hen bore the burden of proof before the Board when seeking to terminate Mr. Hooten's benefits. In a total disability termination case, the employer must prove first, by a preponderance of the evidence that the employee is no longer totally disabled.[61] As the Delaware Supreme Court explained, the threshold question in a total disability termination case is whether the employee is capable of working a job for which a reasonably stable market exists.[62] The employer carries the burden to demonstrate that "the employee is no longer totally incapacitated for the purpose of working."[63]

---

[61] *Howell v. Supermarkets General Corp.*, 340 A.2d 833, 834 (Del. 1975); *Chrysler Corp. v. Duff*, 314A.2d 915, 917 (Del. 1973).
[62] *M.A. Harnett v. Coleman*, 226 A.2d 910, 913 (Del. 1967).
[63] *Torres*, 672 A.2d at 26.

If an employer meets its initial burden, the claimant may still successfully defend against a petition to terminate if he or she can demonstrate displacement.[64] Delaware decisional law provides two ways for an employee to demonstrate that he or she is a displaced. First, the employee may demonstrate that he or she is a *prima facie* displaced worker.[65] Normally, an employee must have only worked in unskilled labor positions to so qualify.[66] As an alternative to demonstrating *prima facie* displacement, an employee may demonstrate that he or she has been "actually displaced." The latter requires the employee to prove that he or she has actively searched for work but has not succeeded.[67] Finally, if the employee demonstrates that he or she has been displaced under either alternative, the burden shifts back to the employer who is permitted to identify available job opportunities within the employee's restrictions.[68]

Some additional benchmarks apply to the Court's review for substantial evidence of record. For example, only the Board can assesses witness credibility.[69] Moreover, the Board's role when doing so is no different if medical experts are involved.[70] In fact, the Delaware Supreme Court has gone as far as to hold that the Board has the sole discretion to resolve any conflicts in expert medical testimony.[71] Accordingly, the Board can simply choose to accept one physician's testimony over

---

[64] *See Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016) (explaining the shifting burdens involved in this analysis and listing the factors that the Board must consider when determining if a claimant is a displaced worker).

[65] *Duff*, 314 A.2d at 916-17.

[66] *Bailey v. Milford Memorial Hosp.*, 1995 WL 790986, at *7 (Del. Super. Nov. 30, 1995).

[67] *See Roos Foods*, 152 A.3d at 119 (explaining that if the claimant fails to demonstrate he or she is a *prima facie* displaced worker, he or she may still show actual displacement by showing reasonable efforts to secure suitable employment and failure to do so because of the work injury)

[68] *Duff*, 314 A.2d at 917, 918 n. 1.

[69] *Bullock*, 1995 WL 339025, at *2.

[70] *Timmons v. Delaware Home & Hosp.*, 1985 WL 5336, at *3 (Del. Super. Dec. 30, 1985).

[71] *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).

another's.[72]   As a broader benchmark for review, if the record contains substantial evidence to support two reasonable but contrary results, the Board's conclusion controls on appeal.[73]

Here, the IAB explained how it weighed Dr. Gelman's and Dr. Mann's opinions and why it relied on Dr. Gelman's.  Dr. Gelman's expert opinion alone provided substantial evidence to support the Board's finding that Mr. Hooten could return to work.  The Board had the exclusive prerogative to decide which of the doctors to believe and which to disbelieve.[74]   When finding Dr. Gelman more credible, the IAB reasonably explained why it discounted Dr. Mann's testimony.  For instance, Dr. Mann did not testify clearly as to whether he believed Mr. Hooten should be restricted from all work or only from commercial driving.   In fact, at one point, Dr. Mann admitted that he had only ever intended that his work restrictions apply to Mr. Hooten's commercial driving – not to all work.[75]   Finally, Dr. Mann admitted that he was not qualified to evaluate whether Mr. Hooten could work sedentary or moderate duty.[76]

Evidence bearing on Mr. Hooten's credibility provided further support for the Board's decision.   At times, Mr. Hooten's description of his injuries conflicted with those provided by Dr. Mann.   Elsewhere, Mr. Hooten admitted that he had denied injury immediately following the intervening accident and then later described it as

---

[72] *Cottman v. Burris Fence Const.*, 918 A.2d 338, 2006 WL 3742580, at *3 (Del. Dec. 19, 2006) (TABLE); *see also Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006) (holding that "[w]here the Board adopts one medical opinion over another, the opinion adopted by the Board constitutes substantial evidence for purposes of appellate review.").

[73] *See Disabatin Bros., Inc. v. Wortman*, 453 A.2d 102, 106 (Del. 1982) (explaining that in cases that have substantial evidence that supports opposing positions, the Court cannot overturn the Board's choice on appeal).

[74]  *Cottman*, 2006 WL 3742580, at *3.

[75] IAB Order, at 26; *see* Tr. Mann, at 34 (stating that Mr. Hooten's work excuse extended only to his pre-injury job).

[76] Tr. Mann, at 33.

only as minimal trauma.[77] Furthermore, Mr. Hooten rated his neck pain consistently as a three on a scale of ten both before the intervening accident and after. Mr. Hooten also told the Board he would accept no production or desk work, and that he did not want to attend vocational rehabilitative training.[78] Finally, within just a few-minute span in the hearing, he told the IAB that he could no longer drive in any capacity because of the work injury, but then told the Board that he drives himself to medical appointments every day.[79]

Substantial evidence also supported the Board's finding that Mr. Hooten was not a displaced worker. First, the record regarding *prima facie* displacement includes sufficient evidence for a reasonable mind to conclude that he had transferrable skills. Dr. Riley explained that Mr. Hooten had previously worked as a CDL driver, a manufacturing worker, and a government employee. Dr. Riley also described Mr. Hooten's age, education, skill level, previous employment, and medical history.[80] In response, Mr. Hooten offered no contravening evidence to support that he was a *prima facie* displaced worker. In fact, Dr. Riley identified eight jobs in the area with employers who could accommodate Mr. Hooten's restrictions.[81]

Likewise, the record contains no evidence to support his actual displacement. He conceded that he had done nothing to look for work since the work accident. Because he had not searched for work in any capacity or participated in vocational rehabilitation, substantial evidence supports the Board's finding that Mr. Hooten took no reasonable efforts to secure suitable employment.

---

[77] Tr. at 106.
[78] Tr. Mann, at 36; Tr. at 113.
[79] Tr. at 116; *cf. id*. at 117.
[80] Tr. at 41.
[81] *Id*. at 48.

Finally, Mr. Hooten includes one other contention in his appeal, in undertone. Namely, a significant part of his claim seems to rely on a suggested inference that the intervening motor vehicle accident aggravated injuries to his lower back and shoulder. Injuries to those body parts, however, were simply not at issue. Namely, Blue Hen and Mr. Hooten presented stipulated facts to the IAB that described his neck injury as the only compensable injury.[82] While the Court appreciates Mr. Hooten's implicit argument that the neck injury *may* not have been his only work-related injury, he did not fairly present a claim for either before the termination hearing. Moreover, even apart the insufficient notice, the hearing record contains no evidence that could have arguably met his burden of proving that an injury, other than to his neck, resulted from the work accident.

## VI.   CONCLUSION

For the abovementioned reasons, the Board did not commit an error of law when it accepted Dr. Gelman's opinions. Substantial evidence supported the Board's decision to terminate Mr. Hooten's total disability benefits and to place him on partial disability. As a result, the Board's decision in this matter is **AFFIRMED**.

**IT IS SO ORDERED**.

/s/Jeffrey J Clark
Resident Judge

---

[82] Appellee's Ans. Br., Ex.  A, ¶ 1.